## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

———————————————————————

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES** | : | |
| **AND EXCHANGE COMMISSION** | : | |
|  | : | |
| **Plaintiff,** | : | |
|  | : | CIVIL ACTION |
| **v.** | : | FILE NO. S 00 CV 2918 |
|  | : | |
| **WILLIAM F. MAHON, ET. AL.** | : | Judge William D. Quarles |
|  | : | |
| **Defendants.** | : | |

———————————————————————

### SEC'S PARTIAL CONSENT MOTION TO REQUEST DISPOSITION BY MOTION AND ENTER FINAL JUDGMENT SETTING DISGORGEMENT, CIVIL PENALTY, AND PREJUDGMENT INTEREST AND A REPARTRIATION ORDER <u>AGAINST DEAN J. JUPITER</u>

Plaintiff Securities and Exchange Commission ("SEC"), with the consent of defendant Dean J. Jupiter ("Jupiter"), moves the Court to proceed by motion to set disgorgement, a civil penalty, and prejudgment interest, and to enter final judgments for those amounts against Jupiter. Upon entry of such an Order, the only remaining issue related to Jupiter will be the SEC's request for entry of a repatriation order against him, which the parties have been unable to reach an agreement on. The parties have agreed, however, to submit this issue to the Court for disposition by motion. In support of this motion, the SEC submits the following:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     <u>Procedural History and Request to Proceed by Motion</u>

On September 28, 2000, the SEC filed its Complaint for Injunctive and Other Equitable Relief against William F. Mahon ("Mahon") and Jupiter. The Complaint alleges that from 1992 through 1997 Mahon, a portfolio manager for Alexander & Alexander Services, Inc. ("Alexander"), and Jupiter, a former registered representative, engaged in a five-year long

scheme to defraud by trading millions of dollars in high-risk derivative securities and concealing $62 million in losses and $35 million in gains resulting from such trading on Mahon's employer's books and records. The Complaint also alleges that as part of the scheme Jupiter paid at least $190,000 in kickbacks to Mahon, and that Jupiter earned at least $14.3 million in commissions from the scheme.

The Complaint sought permanent injunctions, disgorgement, prejudgment interest, and civil penalties against Mahon and Jupiter. All issues relating to Mahon have been resolved. Mahon has been permanently enjoined by consent and paid disgorgement of $190,000, prejudgment interest of $114,862, and a civil penalty of $50,000. On January 17, 2003, this Court entered an Order of Permanent Injunction against Jupiter by consent, which preserved the issues of disgorgement and a civil penalty for a later hearing. Specifically, the Order of Permanent Injunction ("Order") against Jupiter said, in relevant part:

II.

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant disgorge all ill-gotten gains received by him as a result of the conduct alleged in the SEC's Complaint, plus prejudgment interest on those amounts. This Court will set the specific amount of disgorgement, and will determine whether to impose civil penalties on Defendant, and in what amount, in a separate hearing upon due notice and motion by the SEC. At that hearing, the issues will be limited to determining (i) the amount of disgorgement to be ordered and (ii) whether civil penalties should be imposed on Defendant, and the amount of any such penalties.

As outlined below, the SEC and Jupiter have reached a proposed settlement regarding disgorgement, a civil penalty, and prejudgment interest, which they respectfully request this Court consider by motion rather than at a hearing, as called for in the Order. The SEC and Jupiter were unable to reach an agreement regarding the entry of a repatriation order, but have agreed to submit the issue to the court for disposition by motion.

## II.    REQUESTED RELIEF BY CONSENT AND MEMORANDUM OF LAW

### A.    Disgorgement

Disgorgement is designed both to deprive a wrongdoer of unjust enrichment and deter others from violating the securities laws.  *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *SEC v. Tome*, 883 F.2d 1086, 1096 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014 (1988); *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1103-04 (2d Cir. 1972) ("the effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable").

The law does not require precision in determining the proper amount of disgorgement. "The District Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged."  *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997).  The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation."  *First City*, 890 F.2d at 1231.  The wrongdoer, who has created the uncertainty through his violations of the securities laws, bears the risk of uncertainty.  *Id.* at 1232; *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

The total commissions paid to Jupiter[1] for securities transactions executed at the direction of Mahon between 1992 and 1997 were $14,221,185.  The parties agree that this is the

---

[1] From 1991 through June 1996, Jupiter was a registered representative of Meridian Capital Markets, Inc., a registered municipal securities dealer and Meridian Securities, Inc., a registered broker-dealer (collectively, "Meridian").  In 1996, Meridian merged with CoreStates Bank, N.A. and Jupiter continued to work as a registered representative of CoreStates Capital Markets, a registered municipal securities dealer, and CoreStates Securities Corp., a registered broker-dealer (collectively, "CoreStates").  The commissions referenced in this motion were paid to Jupiter by Meridian and CoreStates.

appropriate amount of disgorgement.  *See SEC v. Ted Harold Westerfield,* (94 Civ. 6997 (JSM),

U.S. District Court for the Southern District of New York) (Litigation Release No. 15376) (On

May 23, 1997, the Court found that Westerfield, a broker involved in a kickback scheme with the

advisor of a mutual fund, violated the antifraud provisions of the federal securities laws, and

ordered Westerfield to disgorge all commissions received from the mutual fund over the course

of the scheme).

       B.    <u>Civil Penalty</u>

Having participated in a complex fraud that resulted in significant losses to Alexander,

Jupiter is subject to third-tier penalties under Section 21(d)(3) of the Exchange Act.  *See SEC v.*

*Kenton Capital, Ltd.*, 69 F. Supp.2d 1, 17 (D.D.C. 1998).  The maximum third-tier penalty for each

violation is the greater of $110,000 or the gross amount of pecuniary gain to the defendant.[2]

Although the pecuniary gain that flowed to Jupiter undoubtedly was more than $110,000, given

the substantial proposed disgorgement and prejudgment interest amounts and anticipated

collection issues, the SEC believes that the proposed penalty amount is appropriate.

       C.    <u>Prejudgment Interest</u>

The SEC has calculated prejudgment interest on the disgorgement totals in accordance

with the delinquent tax rate as established by the Internal Revenue Service, IRC § 6621(a)(2),

and assessed on a quarterly basis.  That rate of interest "reflects what it would have cost to

borrow the money from the government and therefore reasonably approximates one of the

benefits the defendant received from its fraud."  *First Jersey*, 101 F.3d at 1476.  *See also SEC v.*

---

[2]  The three tiers of civil penalties for conduct occurring between December 10, 1996 and February 2, 2001 for a natural person are $5,500, $55,000 and $110,000 per violation.  <u>See</u>, Exchange Act Release No. 43897.  Jupiter's conduct spanned from 1992 – 1997, thus overlapping the effective date of the adjustments to civil monetary penalty amounts. Accordingly, the SEC and Jupiter have agreed to imposition of a $110,000 civil penalty.

*Poirier*, 140 F. Supp. 2d 1033, 1047 (D. Ariz. 2001). The prejudgment interest has been calculated on a quarterly basis through January 31, 2005 using the applicable annual interest rates. The parties agree that the prejudgment interest is $15,846,389, bringing the total of disgorgement plus prejudgment interest to $30,067,574.

## II.     CONTESTED REQUESTED RELIEF (REPATRIATION) AND MEMORANDUM OF LAW

Jupiter's own conduct warrants the entry of a repatriation order against him. Jupiter's scheme began in 1992. Since then, and during the pendency of this action, Jupiter created various foreign and domestic trusts and transferred some, if not the remainder, of his assets to them. For example, in approximately April 1997, Alexander was purchased by a subsidiary of Aon Corp. ("Aon"). In May 1997, Aon began investigating Alexander's securities portfolio and eventually uncovered Mahon's fraudulent scheme. Just a month later, in June 1997 Jupiter created "The Dean J. Jupiter Trust" in the Bahamas and funded it with $505,000. Two months later, in August 1997, Aon confronted Mahon, who confessed to the fraudulent scheme with Jupiter. The original beneficiaries of the Dean J. Jupiter Trust were Jupiter and his three adult sons, who have been named as relief defendants. During his deposition, Jupiter's accountant testified that Jupiter created The Dean J. Jupiter Trust, among other reasons, to avoid attachment by the United States Government of his assets and to provide long-term transfer of his net worth to his children. Exhibit A, Pages 39:9 – 14, 36:23 – 37:5, 37:17 – 38:4. Similarly, in April 2002, just four months prior to filing his answer and a motion to submit this case to a Magistrate for alternative dispute resolution, Jupiter created "The Trophy Trust," an "asset protection trust" in the Turks & Caicos Islands. Jupiter funded The Trophy Trust with $100. The original beneficiaries were Barbara Jupiter and her two children, Jillian and Robert Coen, who are named relief defendants to this action. Finally, in December 2003, after participating in mediation, the SEC learned that Jupiter had sold his house

and moved to an undisclosed location, ostensibly to avoid the United States courts' ability to meaningfully enforce any money judgment that may be entered against him in this case. According to Jupiter's accountant, the $1.2 million in proceeds from the sale of the Jupiter residence went into another trust held by Jupiter and his wife, "The Homestead Trust." Exhibit A, 56:20 – 57:2, 57:17 – 58:13. From the Homestead Trust, the $1.2 million was transferred to the Trophy Trust. Exhibit A, 58:14 – 58:20. Jupiter's accountant testified that as May 5, 2004, he believed that there was approximately $800,000 in Trophy Trust (which Jupiter changed in name to "The Guerdon Trust" in late 2002 or early 2003 for reasons unknown). Exhibit A, 31:8 – 24, 47:6 – 47:13, 58:21 – 59:4.

Based on Jupiter's transfer of some, if not the remainder, of his assets to his various trusts, the Court granted the SEC's motion to amend its complaint to add relief defendants and to seek a repatriation order against Jupiter. These facts also support the entry of a repatriation order against Jupiter. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999) (court upholds civil contempt finding against defendants for failure to repatriate assets in foreign trust created as part of an "asset protection plan" designed to shield wealth by moving it to a foreign jurisdiction); *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) (court could compel repatriation of foreign assets where defendant had engaged in "substantial efforts to hide and secrete assets"); *Inter-Regional Financial Group, Inc. v. Hashemi*, 562 F.2d 152, 154 (2d Cir. 1977) (District Court had authority to order defendant to transfer foreign assets into the jurisdiction to enable the court to attach them). *See also SEC v. Banner Fund International*, 211 F.3d 602, 605, 611 (D.C. Cir. 2000) (affirming judgment that, among other things, directed defendants "to repatriate assets received from investors"); *SEC v. Credit Bancorp, Ltd.*, 2000 WL 301022, at *1 (S.D.N.Y. Mar. 21, 2000), and 2000 WL 968010, at *1 (S.D.N.Y. July 12, 2000); *SEC v. Infinity Group Co.*, 27 F. Supp. 2d 559, 562 (E.D. Pa. 1998); *SEC v. Antar*, 831 F. Supp. 380, 397 (D.N.J. 1993).

## III.    CONCLUSION

For the foregoing reasons, the SEC respectfully requests that, with the consent of Jupiter, the Court enter a Final Judgment against him in the amount of $30,177,574, representing $14,221,185 in disgorgement, $15,846,389 in prejudgment interest, and a $110,000 civil penalty. The SEC also respectfully requests that the Court grant its request for the entry of a repatriation order against Jupiter.

Respectfully submitted,

May 2, 2005                                    ___/s/_____
                                               Carolann Gemski, Esq.
                                               United States Securities and Exchange
                                                   Commission
                                               175 W. Jackson Boulevard, Suite 900
                                               Chicago, IL  60604
                                               Phone:  (312) 353-0512
                                               One of the Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I, Carolann Gemski, hereby certify that on May 2, 2005, a copy of the foregoing Motion was filed electronically.  Notice of this filing will be sent electronically to Allan M. Lerner, counsel for Defendant Dean J. Jupiter, and M. Daniel Hughes, counsel for relief defendants Lee, Derek, and Sean Jupiter, by operation of the Court's electronic filing system.  Parties and interested persons may access this filing through the Court's system.

_____/s/_____
Carolann Gemski