UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION | : : : : |
| Plaintiff, | : : |
| v. | : CIVIL ACTION : FILE NO. S 00 CV 2918 : |
| WILLIAM F. MAHON, ET. AL. | : Judge William D. Quarles : |
| Defendants. | : : |

### SEC'S MOTION FOR DISGORGEMENT AND REPATRIATION ORDERS AGAINST RELIEF DEFENDANTS LEE JUPITER, BARBARA JUPITER, JILLIAN COEN AND ROBERT COEN[1]

Plaintiff Securities and Exchange Commission ("SEC") respectfully moves this court to enter a disgorgement and repatriation order against Relief Defendants Lee Jupiter, Barbara Jupiter, Jillian Coen, and Robert Coen ("the Relief Defendants") pursuant to Fed. R. Civ. Pr. 7(b) and Local Rule 105. In support of this motion, the SEC submits the following:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

A.    Procedural History

On September 28, 2000, the SEC filed its Complaint for Injunctive and Other Equitable Relief against William F. Mahon ("Mahon") and Dean J. Jupiter ("Jupiter"). The Complaint alleges that from 1992 through 1997, Mahon, a portfolio manager for Alexander & Alexander Services, Inc. ("Alexander"), and Jupiter, a former registered representative, engaged in a five-

---

[1] This motion is addressed to four of the six named relief defendants. Simultaneous with the filing of this Motion, the SEC is filing a *Motion to Extend Dispositive Motions Deadline Regarding Relief Defendants Sean and Derek Jupiter*, both of whom are in the military and represented by M. Daniel Hughes, Esq. (who also represents the four relief defendants named in this motion). The deadline extension is necessary because Mr. Hughes has not yet responded to undersigned counsel's inquiry whether he will be seeking a stay on behalf of Sean and Derek Jupiter pursuant to The Servicemembers Civil Relief Act, 50 U.S.C. § 522 (2005).

year long scheme to defraud by trading millions of dollars in high-risk derivative securities and concealing $62 million in losses and $35 million in gains resulting from such trading on Mahon's employer's books and records. (First Amended Complaint, ¶ 1 (erroneously labeled as "4")). The Complaint also alleges that as part of the scheme Jupiter paid at least $190,000 in kickbacks to Mahon, and that Jupiter earned at least $14.3 million in commissions from the scheme. (First Amended Complaint, ¶ 2).

The Complaint sought permanent injunctions, disgorgement, prejudgment interest, and civil penalties against Mahon and Jupiter. All issues relating to Mahon have been resolved. Mahon has been permanently enjoined by consent and paid disgorgement of $190,000, prejudgment interest of $114,862, and a civil penalty of $50,000. On January 17, 2003, this Court entered an Order of Permanent Injunction against Jupiter by consent. On May 2, 2005, the SEC filed a partial consent motion seeking disgorgement, a civil penalty, prejudgment interest and a repatriation order against Jupiter. Jupiter consented to entry of final judgment ordering $14,221,185 in disgorgement, $15,846,389 in prejudgment interest, and a $110,000 civil penalty; however, he did not consent to entry of a repatriation order.

On August 16, 2004, this Court granted the SEC's request to add as relief defendants the beneficiaries of foreign and domestic trusts to which Jupiter appears during the course of this litigation, and the underlying fraud, to have transferred some, if not all, of his remaining assets. In relevant part, the SEC amended its complaint to include the following requests for equitable relief against the Relief Defendants:

V.

Issue an Order requiring . . . the relief defendants to take such steps as are necessary to repatriate to the territory of the United States all assets held in any trusts created by or at the request of Jupiter for which they are beneficiaries (whether held by them or under their direct or indirect control, jointly or individually, or otherwise) and to

provide the Commission and the Court a written description of the funds and assets so repatriated.

VI.

Issue an Order requiring the relief defendant to disgorge any ill-gotten gains that they have received or in the future will receive, plus prejudgment interest thereon, including, but not limited to any payments received from Jupiter, whether directly or as a beneficiary of one of Jupiter's trusts.

B.      Jupiter's Actions Warrant Granting The Requested Relief

Jupiter's actions in attempting to remove his assets from this Court's reach warrants imposition of the relief requested in this motion. Jupiter's scheme began in 1992. Since then, and during the pendency of this action, Jupiter created various foreign and domestic trusts and transferred some, if not the remainder, of his assets to them. For example, in approximately April 1997, a subsidiary of Aon Corp. ("Aon") purchased Mahon's employer, Alexander. (First Amended Complaint, ¶ 53). In May 1997, Aon began investigating Alexander's securities portfolio and eventually uncovered Mahon's fraudulent scheme (First Amended Complaint, ¶ 54). Just a month later, in June 1997 Jupiter created "The Dean J. Jupiter Trust" in the Bahamas and funded it with $505,000. (Exhibit B). Two months later, in August 1997, Aon confronted Mahon, who confessed to the fraudulent scheme with Jupiter. (First Amended Complaint, ¶ 55). The original beneficiaries of the Dean J. Jupiter Trust were Jupiter and his three adult sons, who have been named as relief defendants (although relief is sought in this motion only as against one of his adult sons, Lee Jupiter). (Exhibit B). During his deposition, Jupiter's accountant testified that Jupiter created The Dean J. Jupiter Trust, among other reasons, to avoid attachment by the United States Government of his assets and to provide long-term transfer of his net worth to his children. (Exhibit A, Pages 39:9 – 14, 36:23 – 37:5, 37:17 – 38:4). Similarly, in April 2002, just four months prior to filing his answer and a motion to submit this case to a Magistrate for alternative dispute resolution, Jupiter created "The Trophy Trust," an "asset protection trust" in the Turks & Caicos Islands.

3

Jupiter funded The Trophy Trust with $100. (Exhibit C). The original beneficiaries were Barbara Jupiter and her two children, Jillian and Robert Coen, who are relief defendants against whom the requested relief is sought. (Exhibit C). Finally, in December 2003, after participating in mediation, the SEC learned that Jupiter had sold his house and moved to an undisclosed location, ostensibly to avoid the United States courts' ability to meaningfully enforce any money judgment that may be entered against him in this case. (Exhibit D). According to Jupiter's accountant, the $1.2 million in proceeds from the sale of the Jupiter residence went into another trust held by Jupiter and his wife, "The Homestead Trust." (Exhibit A, 56:20 – 57:2, 57:17 – 58:13). From the Homestead Trust, the $1.2 million was transferred to the Trophy Trust. (Exhibit A, 58:14 – 58:20). Jupiter's accountant testified that as May 5, 2004, he believed that there was approximately $800,000 in the Trophy Trust (which Jupiter changed in name to "The Guerdon Trust" in late 2002 or early 2003 for reasons unknown). (Exhibit A, 31:8 – 24, 47:6 – 47:13, 58:21 – 59:4).

## II.  **MEMORANDUM OF LAW**

Pursuant to Section 21(d)(5) of the Securities Exchange Act of 1934, this Court has the authority to grant any equitable relief that may be appropriate or necessary for the benefit of investors. Such equitable authority extends to the relief defendants, who need not be found to have engaged in any wrongdoing to be subject to this Court's authority. *SEC v. Cherif*, 933 F.2d 403, 414 n.11 (7th Cir. 1991) (equitable relief is appropriate against a relief defendant without charging him with any wrongdoing where he "possesses illegally obtained profits but has no legitimate claim to them."). Disgorgement and repatriation of assets are forms of equitable relief long recognized by Courts. *SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998) ("ample authority supports the proposition that the broad equitable powers of federal courts can be employed to recover ill gotten gains for the benefit of the victims of wrongdoing, whether held by the original wrongdoer or by one who has

received the proceeds after the wrong"); *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999) (court upholds civil contempt finding against defendants for failure to repatriate assets in foreign trust created as part of an "asset protection plan" designed to shield wealth by moving it to a foreign jurisdiction); *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) (court could compel repatriation of foreign assets where defendant had engaged in "substantial efforts to hide and secrete assets"); *Inter-Regional Financial Group, Inc. v. Hashemi*, 562 F.2d 152, 154 (2d Cir. 1977) (District Court had authority to order defendant to transfer foreign assets into the jurisdiction to enable the court to attach them).  *See also SEC v. Banner Fund International*, 211 F.3d 602, 605, 611 (D.C. Cir. 2000) (affirming judgment that, among other things, directed defendants "to repatriate assets received from investors"); *SEC v. Credit Bancorp, Ltd.*, 2000 WL 301022, at *1 (S.D.N.Y. Mar. 21, 2000), and 2000 WL 968010, at *1 (S.D.N.Y. July 12, 2000); *SEC v. Infinity Group Co.*, 27 F. Supp. 2d 559, 562 (E.D. Pa. 1998); *SEC v. Antar*, 831 F. Supp. 380, 397 (D.N.J. 1993).

This Court's equitable authority extends to include the requested relief against the Relief Defendants of a prospective disgorgement order and repatriation order.  In *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), the Supreme Court outlined the scope of a District Court's equitable powers and highlighted the need for granting whatever relief may be necessary to effectuate complete, rather than truncated justice:

> Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co*. v. *System Federation*, 300 U.S. 515, 552. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co*. v. *Bowles*, 321 U.S. 321, 329. It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject

matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. *Camp* v. *Boyd*, 229 U.S. 530, 551-552.

Although the Relief Defendants did not participate in Jupiter's fraud, they nonetheless should not be permitted to benefit from it by receiving distributions of Jupiter's assets. By subjecting the Relief Defendants to a prospective disgorgement and repatriation order, this Court will ensure that does not happen. Jupiter's actions clearly demonstrate that he intends to do whatever he can do to avoid being held monetarily responsible for his fraudulent conduct. He has rendered his whereabouts unknown. He has transferred his assets into foreign trusts. Absent the Court granting the relief requested, Jupiter will succeed in his attempt to secret his assets from this Court and redistribute them to the Relief Defendants.

### III.    CONCLUSION

For the foregoing reasons, the SEC respectfully requests that this Court enter the attached proposed disgorgement and repatriation order against the Relief Defendants

Respectfully submitted,

May 13, 2005                                    ___/s/_____
                                                Carolann Gemski, Esq.
                                                United States Securities and Exchange
                                                    Commission
                                                175 W. Jackson Boulevard, Suite 900
                                                Chicago, IL  60604
                                                Phone:  (312) 353-0512
                                                One of the Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

    I, Carolann Gemski, hereby certify that on May 13, 2005, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent electronically to Allan M. Lerner, counsel for Defendant Dean J. Jupiter, and M. Daniel Hughes, counsel for Relief Defendants, by operation of the Court's electronic filing system. Parties and interested persons may access this filing through the Court's system.

                                                              _____/s/_____
                                                               Carolann Gemski